IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PETER JOSE SMITH,<br><br>　　Plaintiff,<br><br><br><br>vs.<br><br><br><br>NU SKIN ENTERPRISES,<br><br>　　Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:07-CV-694 TS |

## I. INTRODUCTION

Plaintiff Peter Jose Smith brings an action against Defendant Nu Skin Enterprises ("Nu Skin") for discrimination under the Americans with Disabilities Act ("ADA") and for defamation arising from his former employment with Nu Skin. Nu Skin moves the Court for summary judgment for failure to exhaust administrative remedies under the ADA and for lack of publication. Because the Court finds that Plaintiff failed to exhaust his administrative remedies under the ADA and because a qualified privilege protected the publication of the alleged defamatory communication, the Court grants Nu Skin's Motion for Summary Judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff worked for Nu Skin for approximately six weeks in late 2006 and early 2007 as a "Spanish Sales Support Representative."[1] Plaintiff claims that he has two disabilities: (1) a physical disability resulting from an injury sustained in a bus accident in 1995, and (2) a bipolar disorder diagnosis in 1994. When Plaintiff applied for the position with Nu Skin, he was receiving Social Security benefits.

On November 17, 2006, Plaintiff applied for the part-time position at Nu Skin under the name "Peter Fred Larsen" and signed a document that stated he "understood" that he would "be working anywhere from 20-30 hours per week as a part-time employee."[2] On November 20, 2006, Plaintiff changed the name on his Social Security card, driver's license, and birth certificate to "Peter Jose Perez Smith." A court issued the order changing Smith's name, however, in 1995. On December 28, 2006, Plaintiff sent an e-mail to his manager stating that he could not work more than ten hours per week for reasons related to his disability and disability benefits. Plaintiff subsequently met with Lisa Killpack ("Killpack"), a Human Resources representative at Nu Skin, and Killpack's administrative assistant. At this meeting, Killpack informed Plaintiff that one of the essential functions of his position was the ability to work between twenty and thirty hours per week. Killpack also told Plaintiff that it was "a little shady" for him to have changed his name from the time he applied at Nu Skin.[3] Killpack made the allegedly slanderous communication only in the

---

[1] Defendant Exhibit 8.
[2] Defendant Exhibit 6.
[3] Plaintiff also alleges in his pleadings that Killpack stated he was "lacking in integrity," "fraudulent," and "dishonest," but Plaintiff did not provided any evidence of these other statements and has thus failed to meet his burden under Fed. R. Civ. Proc. R. 56.

presence of her administrative assistant and Plaintiff.[4]

Plaintiff's last day of actual work was January 3 or January 4, 2007. Plaintiff did not file a charge with the Equal Employment Opportunity Commission ("EEOC") before filing this lawsuit. Plaintiff filed his Complaint in the Fourth District Court of Utah on August 20, 2007. Defendant removed the action to this Court on September 17, 2007.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[5] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[6] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[7]

## IV. DISCUSSION

### 1. Americans with Disabilities Act – Exhaustion of Remedies

"Exhaustion of administrative remedies under the Americans with Disabilities Act is a jurisdictional prerequisite to suit in the Tenth Circuit."[8] In *McBride v. CITGO Petroleum Corp*, the

---

[4] Although Plaintiff claims in his pleading that Killpack published this remark to more individuals, he has not submitted any evidence, in the form of an affidavit or otherwise, that Killpack made the statements to any other persons and has thus failed to meet his burden under Fed. R. Civ. Proc. R. 56.
[5] *See* Fed. R. Civ. P. 56(c).
[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).
[7] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).
[8] *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2002) (citing *Jones v. Runyon*, 91 F.3d 1398, 1399 n. 1 (10th Cir. 1996)) (citation omitted).

Tenth Circuit explicitly rejected the contention that such a requirement does not exist for private sector employees.[9] The court stated further that "exhaustion of administrative remedies [. . . is] necessary to establish subject matter jurisdiction."[10] Furthermore, "because failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that [he] did exhaust."[11] Exhaustion of administrative remedies requires that the would-be plaintiff at least file a charge with the EEOC, according to the EEOC's minimum requirements for a charge.[12] That is, "[t]he first step to exhaustion is the filing of a charge of discrimination with the EEOC."[13] In fact, the Tenth Circuit has specifically stated, "In the tenth circuit, a plaintiff must exhaust her claims before the EEOC as a prerequisite to federal court jurisdiction over her ADA claims."[14]

It is undisputed that Plaintiff did not exhaust his administrative remedies with regards to his claim under the Americans with Disabilities Act as Plaintiff admits he did not file a charge with the EEOC. Therefore, Plaintiff has failed to exhaust his administrative remedies, which bars his claim in this Court for lack of subject matter jurisdiction under Tenth Circuit precedent. Standard counting procedures under the Federal Rules of Civil Procedure would require Plaintiff

---

[9] *Id.*

[10] *Id.*

[11] *Id.* at 1106 (citing *United States v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1278 (10th Cir. 2001)).

[12] *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194–95 (10th Cir. 2004). *But see*, *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183–85 (10th Cir. 2007) (allowing an intake questionnaire to satisfy the EEOC's minimum requirements for a charge in part because the EEOC treated it as such).

[13] *Jones v. U.P.S., Inc.*, 502 F.3d at 1183–85 (citing *Jones v. Runyon*, 91 F.3d 1398, 1399 n. 1 (10th Cir.1996)).

[14] *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (citations omitted).

to have filed his charge by October 31, 2007, at the latest. As such, an entire calendar year has passed since this filing deadline. Even though the parties dispute when this statutory filing date began running, it is clear that "the plaintiff must file a charge of discrimination with the EEOC within 300 days 'after the alleged unlawful employment practice occurred[.]'"[15]

Given the allegations in this case, the date of the alleged unlawful employment practice would have to be sometime between November 17, 2006, when Plaintiff applied for the position, and January 3 or 4, 2007, which was Plaintiff's last day at Nu Skin. Accordingly, using standard counting procedures, Plaintiff was required to file his charge with the EEOC on or about September 13, 2007, at the earliest, and on or about October 31, 2007, at the latest. Therefore, Plaintiff is well beyond the statutory period to file a timely charge with the EEOC. Because Plaintiff has failed to exhaust his administrative remedies, Nu Skin is entitled to summary judgment on this claim.

## 2. Defamation [16]

"To state a claim for defamation, [a plaintiff] must show that defendants published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage."[17] According to the Restatement (Second) on Torts, publication is defined as

> [a]ny act by which the defamatory matter is intentionally or negligently communicated to a third person. . . . The fact that the defamatory matter is

---

[15] *Garcia v. Dillon Companies, Inc.*, No. 05-cv-02339-MSK-MEH, slip op., 2008 WL 384580 at *2 (D. Colo. Feb. 11, 2008) (quoting 42 U.S.C. § 2000e-5(e)(1)).
[16] There is only one statement at issue for this motion ("a little shady") as Plaintiff has not established the other alleged statements according to the requirements of Rule 56.
[17] *West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994) (emphasis added).

communicated to an agent of the defamer does not prevent it from being a publication sufficient to constitute actionable defamation. The publication may be privileged, however. . . . The communication within the scope of his employment by one agent to another agent of the same principal is a publication not only by the first agent but also by the principal and this is true whether the principal is an individual, a partnership or a corporation. [18]

Defendant's theory seems to suggest that there is no publication if a communication is privileged.[19] This is not the case, however, as the privilege merely protects the communication from liability for defamation; it does not erase the publication's existence.[20] It is clear that publication is required, but it is equally clear that it is undisputed that there was publication in this case.

The existence of a privilege is an affirmative defense.[21] The defendant must initially "raise privilege as an affirmative defense in a responsive pleading in order to shift the burden to the plaintiff to show the inapplicability of a qualified privilege." [22]

Nevertheless, Defendant raised the issue of privilege, which leads the court to consider whether a privilege protected the publication by Ms. Killpack to her administrative assistant. Under the law of defamation, "false and defamatory statements are not actionable if they are protected by a legal privilege."[23] Whether a statement is entitled to the protection of a conditional privilege presents a question of law, which the Court can determine on undisputed facts on summary judgment.[24] The court holds that a qualified privilege protects Ms. Killpack's communication.

---

[18] RESTATEMENT (SECOND) OF TORTS § 577(a), (e), (i). *See also*, *Howcroft v. Mountain States Tel. and Tel. Co.*, 712 F.Supp. 1514, 1523–24 (D. Utah 1989).
[19] Defendant's Mem., 4 (June 25, 2008).
[20] *See* Restatement, *supra* note 18, at § 577(e).
[21] *Zoumadakis v. Uintah Basin Med. Ctr., Inc.*, 122 P.3d 891, 893 (Utah App. 2005) (citations omitted).
[22] *Id.* at 893–94.
[23] *DeBry v. Godbe*, 992 P.2d 979, 983 (Utah 1999).
[24] *O'Connor v. Burningham*, 165 P.3d 1214, 1224 (Utah 2007).
6

"[Q]ualified or conditionally privileged communications which, when made in good faith, without malice, to a person having a corresponding responding interest or duty, are likewise nonactionable."[25] This classification of privilege is labeled "conditional" or "qualified" because it only applies if the would-be privilege is accompanied by (1) good faith and reasonable care as to the truth of the statement, (2) fairness in reporting, (3) a limitation in the publication to only the covered information, and (4) an assurance that the information is only published to persons "necessary to the purpose." [26]

The qualified or conditional privilege may apply in a number of scenarios. It is commonly understood that "an employer's communication to employees and to other interested parties concerning the reasons for an employee's discharge" are protected by a qualified privilege. [27] Similarly, "statements made either by representatives of management or by representatives of an employee at a conference and bargaining session having for its purpose the adjustment of a grievance of the employee or other peaceable disposition of such grievance are unqualifiedly privileged."[28]

The law also recognizes a conditionally privileged publication when there is "a legitimate common interest between the publisher and the recipient. . . ."[29] Illustrative of this point, the court in *Brehany* held that a qualified privilege covered statements made by an employer during a business meeting regarding the drug-related grounds for employees' dismissal. [30]

---

[25] *Iverson*, 237 F.2d at 899 (citations omitted).
[26] *Berry v. Moench*, 331 P.2d 814, 819 (Utah 1958).
[27] *Brehany*, 812 P.2d at 58.
[28] *Gen. Motors Corp. v. Mendicki*, 367 F.2d 66, 70 (10th Cir. 1966).
[29] *Brehany*, 812 P.2d at 58.
[30] *Brehany*, 812 P.2d at 58.

Therefore, a conditional privilege permits the publication of allegedly defamatory statements unless the publisher abused the conditional privilege[31] because "a qualified privilege rebuts the presumption of malice present in . . . libelous speech, which therefore requires a showing of express malice" to defeat that presumption.[32] Moreover, if a qualified privilege exists, the plaintiff bears the burden to prove abuse of the privilege.

While Plaintiff offers several disputed factual assertions in his pleadings, he fails to provide any evidence, through affidavit or otherwise, to support these assertions. The Court may perform an independent analysis to determine whether a privilege existed.[33] Therefore, summary adjudication on the defamation claim is proper because the Court determines a conditional privilege exists. The communication at issue was privileged as a matter of law.

Thus, although the communication constitutes publication, a conditional privilege protected the publication, which alleviates Nu Skin of liability for defamation. Further, Plaintiff failed to provide any evidence that raises a genuine issue of material fact regarding the existence of the conditional privilege or the abuse of the privilege as spelled out above.

## V. CONCLUSION AND ORDER

The Court finds that Plaintiff failed to exhaust his administrative remedies under the ADA before bringing this action. Therefore, his cause of action is jurisdictionally barred. In addition, the Court finds that a qualified privilege existed as a matter of law and protected the communication between Killpack and her administrative assistant.

---

[31] *Thomas*, 324 F.3d at 1179–80 (citing *Brehany*, 812 at 58).
[32] *Iverson*, 237 F.2d at 899 (citations omitted).
[33] *O'Connor*, 165 P.3d at 1224–25.

The Court finds Defendants have shown that there are no material issues of fact and that they are entitled to judgment as a matter of law, it is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 9) is GRANTED on all claims.

DATED   November 5, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge